IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **TIMIKA SMASH,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| v. | : | No. 21-1568 |
| **DOVER DOWNS, INC.,** | : | |
| Defendant. | : | |

Restrepo, *Circuit Judge*                                                                                        July 27, 2022

**MEMORANDUM**

Before the Court is Defendant Dover Downs's Motion to Compel Arbitration. D.I. 6. Plaintiff Timika Smash brought the underlying action against Dover Downs, alleging sex and pregnancy-based discrimination. These claims arise from Smash's former employment with Dover Downs. For the following reasons, the motion to compel arbitration will be GRANTED and the case will be DISMISSED.[1]

**I.   BACKGROUND**

On August 28, 2019, Defendant Dover Downs, a Delaware-based casino, hired Plaintiff Timika Smash as a table games dealer. D.I. 1 at ¶ 8. As a condition of her employment, Smash

---

[1] The case will be dismissed because this Court lacks jurisdiction, having concluded that a valid and enforceable arbitration agreement exists and no non-arbitrable claims remain. *Ebner v. Fin. Architects, Inc.*, 763 F. Supp. 2d 697, 699 (D. Del. 2011).

1

signed the Employment Disputes Resolution Agreement (the "Arbitration Agreement") on the day she was hired.  D.I. 7 at 28:3.  The Arbitration Agreement states:

> [I]n the interest of resolving employment disputes without the expenses and delays associated with lawsuits, we require that employees submit virtually all employment disputes that cannot be handled through Steps One, Two, or Three to binding arbitration.[2]

D.I. 7-1 at 36.  Two weeks after starting work at the casino, Smash notified Dover Downs that she was pregnant.  D.I. 1 ¶ 12.  Then, on September 20, 2019, a Dover Downs supervisor complained that Smash's pregnancy was "showing;" he also forbade her from wearing elastic pants.  *Id.* at ¶ 13.  Two days later, on September 22, 2019, Dover Downs terminated Smash, saying she was not a "good fit."  *Id.* at ¶ 14.

On February 13, 2020, Smash filed a written charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  *Id.* at ¶ 6.  On August 5, 2021, Smash received a "Right to Sue Notice" from the EEOC.  *Id.* at ¶ 7.  On November 3, 2021, Smash filed a complaint in the United States District Court for the District of Delaware against Dover Downs alleging sex and pregnancy-based discrimination.[3]  *Id.* at ¶ 16.  On January 4, 2022, Dover Downs moved to compel arbitration and dismiss the plaintiff's complaint or alternatively, to stay proceedings pending the outcome of the arbitration pursuant to the Arbitration Agreement.  D.I.

---

[2] "Step [o]ne: Speak to [y]our [s]upervisor . . . . [s]tep [t]wo: [s]peak to [y]our [s]upervisor's [s]upervisor . . . . [s]tep [t]hree: [s]peak to a [m]anager in [h]uman [r]esources . . . ."  D.I. 7-1 at 35.

[3] In Count One of the Complaint, Plaintiff alleges the defendant discriminated against her on account of her sex and pregnancy, justiciable under Title VI of the Civil Rights Act of 1954, 42 U.S.C. §2000E, *et seq.*, and the Pregnancy Discrimination Act of 1978 ("PDA"), 42 U.S.C. § 2000e(k).  D.I. 1 at ¶ 16-17.  In Count two of the Complaint, incorrectly labeled as "Count I", Plaintiff alleges that the defendant violated the Delaware Discrimination in Employment Act, 19 Del. C. §710, *et seq*.  *Id.* at ¶ 26.

6 at 20.  In response, Smash argues that she should not be bound by the Arbitration Agreement because it violates public policy.[4]  D.I. 9 at 53.

## II. Legal Standard

When it is apparent, based on the face of the complaint, that a dispute is subject to an enforceable arbitration agreement, a court will review a motion to compel arbitration under the motion to dismiss standard as described in Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013).  Under this standard, the nonmoving party bears the burden of showing that they did not intend to be bound by the arbitration agreement.  *See id.* at 773.  In deciding a motion to dismiss, the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief.  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citations omitted).  Additionally, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

## III. DISCUSSION

### A. The Federal Arbitration Act

The Federal Arbitration Act ("FAA") provides that an arbitration agreement "shall be valid, irrevocable, and enforceable . . . ."  9 U.S.C. § 2, *et seq.* (West).  Under federal law, there is a

---

[4] Plaintiff argues that compelling arbitration in this case would violate public policy because it would leave her with no remedy.  D.I. 9 at 53.  Plaintiff maintains that if the Court compels arbitration, then Dover Downs will move to dismiss her discriminations claims on the grounds of untimeliness.  *Id.* at 53–54.

strong presumption in favor of arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985); s*ee also In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 133 F.3d 225, 231 (3d Cir. 1998). To compel arbitration, the Third Circuit employs a two-pronged test. *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). This test requires the court to determine "(1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Id.* The court will compel arbitration when both prongs are satisfied. *Id.*

To determine whether a valid agreement to arbitrate exists, the arbitration agreement should be interpreted according to "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Here, Delaware state law controls because the parties entered into the Arbitration Agreement within the state of Delaware. D.I. 7 at 30. The validity of the Arbitration Agreement will be determined based on the plain meaning of the text. *See Gentile v. SinglePoint Fin., Inc.*, 788 A.2d 111, 113 (Del. 2001). Under Delaware state law, a valid contract requires (1) intent to be bound, (2) sufficiently definitive terms, and (3) consideration. *Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010).

The scope of an arbitration agreement is governed by federal law. *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 524 (3d Cir. 2009). Federal law requires courts to compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

### B. The Arbitration Agreement

In applying the test here, we apply a presumption of arbitrability and find no basis to overcome this presumption. *See Mitsubishi Motors Corp.*, 473 U.S. at 615. The Arbitration

Agreement is valid and the alleged dispute, arising out of Smash's discrimination complaint, falls within its scope.

     First, the Arbitration Agreement is valid because it fulfills the required elements of a contract under Delaware state law: (1) intent to be bound, (2) sufficiently definitive terms, and (3) exchange of consideration. *Osborn*, 991 A.2d at 1158. The parties' intent to be bound by the Arbitration Agreement is manifested by their signatures. D.I. 7-1 at 38. The Arbitration Agreement contains sufficiently definitive terms, stating that both Smash and Dover Downs agree to forego the right to sue each other in court and further agree to arbitrate "any dispute that may arise from" Plaintiff's employment. D.I. 7-1 at 38. Finally, the parties' mutual assent to the Arbitration Agreement qualifies as adequate consideration.[5] D.I. 7-1 at 38. We therefore conclude that the Arbitration Agreement between Smash and Dover Downs is a valid contract, thus satisfying the first prong of the Third Circuit's test to compel arbitration. *Trippe Mfg. Co.*, 401 F.3d at 532.

     Second, the dispute between Smash and Dover downs falls within the scope of the Agreement because Smash agreed to arbitrate "any dispute" arising out of her employment, including discrimination claims and issues surrounding arbitrability. D.I. 7-1 at 38. Smash does not dispute that the discriminations claims are within of the scope of the Agreement, but instead argues that the Agreement is unenforceable because it violates public policy. D.I. 9 at 53. This argument fails to identify any "facts sufficient to place the agreement to arbitrate in issue . . . ." *Guidotti,* 716 F.3d at 776. Section (j) of the Arbitration Agreement falls squarely within the

---

[5] "When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002).

scope of the asserted dispute because it specifies that any "[c]laims relating to the enforceability of this agreement shall also be subject to arbitration . . . ." D.I. 7-1 at 38; *see also AT&T Techs.*, 475 U.S. at 650.  According to the plain language of the Arbitration Agreement, the dispute falls within the scope of the Agreement.

We therefore conclude that the Arbitration Agreement is valid and enforceable and the dispute between the parties falls within the scope of the Arbitration Agreement, thus subjecting these claims to arbitration.  *Trippe Mfg. Co.*, 401 F.3d at 532.

## IV. CONCLUSION

For the reasons discussed above, the Court will grant Defendant's motion to compel arbitration (D.I. 6) and dismiss the plaintiff's complaint (D.I. 1).

An appropriate order follows.